```
          IN THE UNITED STATES DISTRICT COURT FOR
          THE DISTRICT OF MARYLAND, NORTHERN DIVISION
```

HAROLD ELLIS JACKSON,              *

    Petitioner,                *

        v.                      *    CIVIL NO.:    WDQ-09-2721
                                  *    CRIMINAL NO.: WDQ-02-0305
UNITED STATES OF AMERICA,          *

    Respondent.                *

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

On June 23, 2003, Harold Ellis Jackson pled guilty to bank robbery. ECF No. 11. On August 28th, 2003, he was sentenced to 151 months imprisonment. ECF No. 13. His motion to vacate his sentence, ECF No. 14, is pending. A hearing was held on July 13, 2012 to determine whether Jackson asked his attorney to appeal his sentence. For the following reasons, Jackson will be granted a belated appeal.

I.    Background[1]

In March 2002, Jackson entered the SunTrust Bank at 1704 Reisterstown Road, Baltimore Maryland,[2] and handed one of the bank tellers a note that said "Don't F*** with me, don't hand me a dye bag." ECF No. 63 at 15:7-15. The teller, afraid for her

---

[1] The facts are taken from Jackson's plea agreement, ECF No. 10, the transcript of his guilty plea, ECF No. 63, and the Court's recollection of the July 13, 2012 evidentiary hearing.

[2] At the time, SunTrust was insured by the Federal Deposit Insurance Corporation. ECF No. 10 ¶2.

safety, pulled an alarm while giving Jackson $2,914. The bank surveillance cameras were working, and captured "Jackson's likeness in unusual[] detail and clarity." *Id.* 15:16-24.

On August 12, 2002, Paul Hazlehurst, Esq., then an Assistant Federal Public Defender, was appointed to represent Jackson.[3]

On March 7, 2003, Assistant United States Attorney James Warwick sent Hazlehurst a plea offer for Jackson. ECF No. 10. Although he did not remember doing so with Jackson, Hazlehurst usually read the entire plea offer to his clients, then explained any portion which the client did not understand. He has no reason to believe he did not follow this practice with Jackson. On April 11, 2003, Jackson and Hazlehurst signed the plea agreement. By signing it, Jackson admitted that he took "custody and control of an employee of SunTrust Bank," and took the money "by the use and threatened use of force, violence and intimidation." Jackson agreed: (1) that he was a career offender under Guideline §4B1.1,[4] (2) that he had a base offense

---

[3] Hazlehurst represented a number of clients while he represented Jackson, and has had hundreds of clients since. He recalled that he had represented Jackson, but remembered few particulars. Jackson remembered meeting with Hazlehurst once before arraignment.

[4] In 1995 Jackson was convicted of robbery with a deadly weapon; in 1990 he was convicted of battery; in 1985 he was convicted of robbery. ECF No. 10 ¶6.a.

level of 32 pursuant to §4B1.1 and would receive a three-level downward adjustment for acceptance of responsibility for a total offense level of 29, and (3) that he was in Criminal History Category VI. ECF No. 10 ¶6.a. Jackson also agreed to waive his right to appeal unless the Court departed from the applicable guidelines range.[5] *Id.* ¶8.

In exchange, the government agreed to recommend (1) a sentence at the low end of the guidelines range, (2) that the sentence run concurrently with Jackson's state sentence, and (3) that Jackson be allowed to serve his sentence in a federal institution, if he wished. *Id.* ¶7.a.

On June 23, 2003, Jackson pled guilty pursuant to the plea agreement. The Court inquired into Jackson's mental health. Jackson said that he suffered from depression and had taken, as prescribed, Benadryl and Prozac that morning. ECF No. 63 at 5:2-7. Jackson said that the medication did not "create any problems for [him] in terms of what[ was] going on" at sentencing, and he understood what was going on and where he was. *Id.* 5:18-25.

On August 29, 2003, Jackson was sentenced to 151 months incarceration (i.e., the bottom of the guidelines range). Jackson recalled that at sentencing, Warwick did not recommend that Jackson be placed in federal custody, argued for a sentence

---

[5] Jackson's guidelines range was 151-188 months.

3

at the top of the guidelines range, and argued against a downward departure.

At the July 13, 2012 hearing, Jackson testified that about two days after he was sentenced, he telephoned Hazlehurst from the Maryland Correctional Institution in Jessup, Maryland. Jackson recalls telling Hazlehurst that he wanted to appeal the sentence based on Warwick's arguments for a sentence at the top of the guidelines range and his failure to recommend that Jackson be taken into federal custody. Jackson recalls that Hazlehurst said that he would "take care of" the issues. Hazlehurst does not recall being asked to file an appeal, but said he would have filed one if asked.

About a month after he was sentenced, Jackson was transferred to Eastern Correctional Institution ("ECI"), a Maryland state facility. On November 20, 2003 Hazlehurst wrote to Jackson that he was "still puzzling over what mechanism could be used" to move Jackson to federal custody. ECF No. 66. After a while it became difficult to reach Hazlehurst; Jackson recalls that Hazlehurst did not return his calls. All communication with Hazlehurst ended about five or six months after sentencing. Jackson believed that Hazlehurst was doing "whatever needed to be done" to remedy his situation.

Between October 2003 and early 2005, Jackson's doctor at ECI prescribed him "the whole gamut" of medications for

4

depression, hyperactivity, and other mental health conditions. Jackson believes the drugs sedated him, and made thinking and writing difficult. In early 2005, Jackson was assigned to a new doctor who "said [he] should never have been prescribed" some of the drugs he was taking; that doctor adjusted his medications, and Jackson believes that he was again able to think clearly.

In early 2005, Jackson wrote to Hazlehurst and Warwick to ask about his case. On May 4, 2005, Jackson asked the Court to reduce his sentence. ECF No. 14. The Court construed the request as a motion under 28 U.S.C. § 2255 and dismissed it as time-barred. ECF No. 16. On November 12, 2006, Jackson filed in the Fourth Circuit a motion for authorization to file a successive application for relief. On April 19, 2007, the Fourth Circuit denied authorization to file a successive § 2255 application. On May 26, 2010, Jackson filed a motion for relief from judgment under Rule 60(b). ECF No. 29. On December 10, 2010, this Court denied that motion as untimely. ECF No. 30. On August 19, 2011, the Fourth Circuit vacated the denial order, and remanded the case so that Jackson could be provided notice of the Court's intention to treat the May 2005 filing as a § 2255 motion and to determine whether the Rule 60(b) motion had been timely filed. ECF No. 38.[6]

---

[6] On October 18, 2011, the Court had notified Jackson that his Rule 60(b) motion, ECF No. 29, was untimely and inquired whether

On March 1, 2012, upon reconsideration of the remand, the Court notified Jackson that it would treat his May 2005 request for a sentence reduction as a § 2255 motion. ECF No. 56. On March 15, 2012, Jackson requested that his May 2005 filing be treated as a § 2255 motion; he supported that request and his request for equitable tolling with the statement he had used to support his argument for equitably tolling limitations for his 2010 Rule 60(b) motion. *Compare* ECF No. 57 Attach. 1, *with* ECF No. 51. The government opposed equitable tolling. ECF No. 53.

On March 27, 2012, the Court appointed counsel. ECF No. 59. On July 13, 2012, a hearing was held. Jackson and Hazlehurst testified.

II. Analysis

   A.   Statute of Limitations

A one-year statute of limitations applies to a motion to vacate. *See* 28 U.S.C. § 2255(f). Jackson did not appeal his conviction. His conviction and sentence became final for the purposes of filing a § 2255 motion 10 days after judgment was entered on August 29, 2003, after the time for appeal had expired. *See United States v. Clay*, 537 U.S. 522, 524-25, 532

---

he wanted that motion treated as a motion to vacate under 28 U.S.C. § 2255. ECF No. 46. On October 27, 2011, Jackson requested that his motion be considered under § 2255. ECF No. 48. On November 28, 2011, the Court had informed Jackson that ECF No. 29 had been untimely filed and granted him 28 days to show his entitlement to equitable tolling. ECF No. 49.

(2003); Fed R. App. P. 4(b)(2002). The limitations period began on September 8, 2003, and--absent equitable tolling--expired one year later on September 9, 2004. *See Holland v. Florida*, 130 S. Ct. 2549, 2554 (2010) (equitable tolling applies to the one-year limitations period). Jackson's § 2255 motion, the letter requesting a sentence reduction, was filed on May 4, 2005, more than one year after his judgment of conviction became final. Absent equitable tolling, the motion was time-barred.

B.   Equitable Tolling

Jackson contends that Hazlehurst "str[u]ng[] him along with no intentions of pursuing" the appeal that Jackson had requested, so after the time for filing a § 2255 had expired, he had "no recourse but to campaign directly to the court via letters." ECF No. 51 at 1. He also contends that his maintenance on multiple psychiatric medications from October 2003 until early 2005 impeded his ability to pursue an appeal. *Id.* at 3-4.

Equitable tolling is a sparingly granted, extraordinary remedy.[7] Equitable tolling applies only when a petitioner can

---

[7] *See United States v. Prescott*, 221 F.3d 686, 688 (4th Cir. 2000). It is available only in "those rare instances where--due to circumstances external to the party's own conduct--it would be unconscionable to enforce the limitation period against the party and gross injustice would result," *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003) (*en banc*) (internal quotation marks omitted) (*citing Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)).

demonstrate that (1) he has been pursuing his rights diligently, and (2) some extraordinary circumstance prevented his timely filing. *See Holland*, 130 S. Ct. at 2563.

Whether equitable tolling applies depends on the facts and circumstances of each case. *See Harris*, 209 F.3d at 329-30. Generally, ineffective assistance of counsel alone does not warrant equitable tolling. *Beery v. Ault*, 312 F.3d 948, 951 (8th Cir. 2002) (*citing Harris*, 209 F.3d at 331). Equitable tolling based upon attorney misconduct requires more than a "garden variety claim of excusable neglect." *United States v. Oriakhi*, 394 F. App'x 976, 977 (4th Cir. 2010) (*citing Holland*, 130 S. Ct. at 2562-65).

An attorney's failure to file an appeal when his client requests one justifies equitable tolling under *Holland*. *See* 130 S. Ct. at 2564 (failure to file habeas petition on time, "despite [the petitioner's] many letters that repeatedly" directed counsel to do so, justified equitable tolling).

An attorney must file an appeal when his client "unequivocally instruct[s]" him to do so. *United States v. Poindexter*, 492 F.3d 263, 269 (4th Cir. 2007); *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). If so instructed, an attorney is required to file an appeal even if (1) the client has waived his right to appeal, and (2) it would be harmful to the client's interests. *Poindexter*, 492 F.3d at 273. When counsel has been unequivo-

cally instructed but fails to file a timely notice of appeal, "prejudice is presumed because it results in the 'forfeiture' of the appellate proceeding." *Poindexter*, 492 F.3d at 268.

To justify equitable tolling, the petitioner must also show that he could not have learned that his attorney failed to file an appeal "until sometime within a year of the date the instant § 2255 motion was filed." *Harris v. United States*, No. 04-cr-0088-AW, 2007 WL 2579839, *2 (D. Md. Aug. 31, 2007).[8]

The hearing established that Jackson clearly recalls (1) asking Hazlehurst to file an appeal during their telephone conference two days after sentencing, (2) being told that Hazlehurst would "do whatever needed to be done," and (3) repeatedly trying to contact him during the months after sentencing. Hazlehurst does not remember Jackson's request but cannot say that Jackson did not request an appeal. The last communication from Hazlehurst that suggested Hazlehurst was addressing Jackson's concerns was in or around January 2004.

Jackson was "sedated" from his medications until early 2005, and Jackson resumed writing to Hazlehurst, Warwick, and the Court in early- to mid-2005 when he realized that no appeal or other motions had been filed on his behalf.

---

[8] *See also Green v. Johnson*, 515 F.3d 290, 305 (4th Cir. 2008) (holding that petitioner was not entitled to equitable tolling when his attorney's failure to file an appeal was discoverable on the online court docketing system through the exercise of due diligence).

Given Jackson's efforts to have his sentence reviewed--efforts which began at most two days after sentencing--his trial attorney's understandable inability to recall whether Jackson had asked him to appeal, and Jackson's diminished capacity from the multiple sedating medications on which he was maintained until early 2005 (a date within one year of filing his May 4, 2005 § 2255 motion), equitable tolling is appropriate. *See Harris*, 2007 WL 2579839, *2.

### C. Section 2255 Motion

#### 1. Failure to File an Appeal

Because (1) Jackson unequivocally recalls asking Hazlehurst to file an appeal and being told that Hazlehurst would "do whatever needed to be done," (2) Hazlehurst does not remember Jackson's request but can not say that Jackson did not request an appeal, and (3) Jackson's dissatisfaction with his sentence immediately after sentencing reasonably demonstrated that he "was interested in appealing,"[9] the Court will grant Jackson a belated appeal.

#### 2. Other Issues

As Jackson will receive appellate review of his sentence, the Court will not decide his other issues.

---

[9] *See Flores-Ortega*, 528 U.S. at 480.

III. Conclusion

For the reasons stated above, Jackson will be permitted to appeal his sentence.

_7/27/12_  
Date

_____  
William D. Quarles, Jr.  
United States District Judge